UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHANE VANDERMOLEN                                                                                    PLAINTIFF

v.                                    Civil No. 6:14-CV-06113-SOH-BAB

M. CHAMBERLIN (Chief                                                                               DEFENDANTS
of Deputies), SGT. MCFEE,
CPL. KELLOGG

### REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Shane Vandermolen, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 27. A hearing was held on February 29, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion. ECF No. 30. After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

1.    **BACKGROUND**

Plaintiff filed his Complaint on October 8, 2014. ECF No. 1. Plaintiff alleges Defendants violated his constitutional rights by failing to provide adequate medical treatment for his seizures while he was incarcerated in the Garland County Detention Center ("GCDC"). ECF No. 1, p. 3-7. Plaintiff states he was booked into GCDC on August 13, 2012. Plaintiff states he informed the

medical personnel and the rest of the GCDC staff of his "long history of epilepsy" at his booking. ECF No. 1, p. 3. The seizures in question for this lawsuit[1] occurred on September 22, 2014, and September 23, 2014. ECF No. 1, pp. 3-5.

Plaintiff submitted a Supplement to his Complaint on July 27, 2015. ECF No. 15. This Supplement contained grievance 14-09-087. ECF No. 15, p. 3. Plaintiff filed the grievance with GCDC on September 23, 2014. ECF No. 15, p. 3. Based on his Complaint and the grievance documents, Plaintiff claims he had five seizures on September 22, 2014, and three seizures on September 23, 2014. ECF Nos. 1, pp. 3-4; 15, p. 3. His first three seizures on September 22, 2014, occurred in the nurse's office. ECF No. 15, p. 3. He alleges Defendants McFee and Kellogg denied him medical treatment for these seizures. Plaintiff does not identify what treatment was denied to him in his Complaint. However, in his grievance he states Defendant McFee denied him adequate treatment on this date by "not calling LifeNet or anybody in the medical field." ECF No. 15, p. 3. He alleges several deputies witnessed this denial. ECF No. 1, p. 3. Later that same day he claims he had two more seizures. He claims Defendant Kellogg denied him medical treatment. During these two seizures, he claims he fell and hit his head on the concrete, causing injury to his head and neck. ECF Nos. 1, pp. 5-6; 15, p. 3. He states he is now likely to injure his head and neck in the future. ECF No. 1, p. 6.

Plaintiff alleges he had three more seizures on September 23, 2014. He claims he fell to the floor and got "huge knots" on his head. ECF No. 1, p. 4. He claims Defendant Kellogg denied him treatment. He further claims Defendant Kellogg called Defendant Chamberlin, and again

---

[1] Plaintiff filed a prior lawsuit in this District against GCDC for denial of medical care for his seizures on January 9, 2014. Case no. 6:14-cv-06001 was dismissed with prejudice on March 7, 2016.

denied him medical treatment after the call. He states Deputies Polk and Ball witnessed this incident. ECF Nos. 1, p. 4; 15, p. 3. Plaintiff does not specify what medical treatment he believes should have been administered to him on this date in his Complaint or grievance.

In his grievance, he states he now suffers from blurry vision, vomiting, and severe headaches because of his denial of medical care for these two seizure incidents. ECF No. 15, p. 3. Plaintiff submitted no medical records.

Plaintiff did not use the court-approved § 1983 form to submit his Complaint, and does not indicate if he is proceeding against Defendants in their official capacities, individual capacities, or both. Plaintiff seeks compensatory and punitive damages. ECF No. 1, p. 7.

Defendants filed their Summary Judgment Motion on February 10, 2016. ECF No. 27. A Summary Judgment Hearing was held on February 29, 2016. ECF No. 30. Plaintiff appeared in person, and gave a sworn statement in response to the Motion. Plaintiff was asked to explain what each Defendant did or did not do which violated his constitutional rights on September 22, 2014. Plaintiff testified Defendant Chamberlin was in charge of the facility, and he ordered Defendant McFee not to call LifeNet to take him to the hospital. He further testified Defendant Chamberlin did not allow officers to give medical attention. Instead, Defendant Chamberlin instructed them to place him in a holding cell. Plaintiff testified Defendants McFee and Kellogg followed orders and put him in the holding cell. The nurse was not present. There was no medical staff at the time. When asked what the deputies could have done for him, Plaintiff testified they could have watched him rather than just leaving him in a holding cell. He testified he had a knot on his head and he was dizzy, vomiting, and had blurred vision.

Plaintiff testified Defendant Kellogg was not present on September 23, 2014. Plaintiff

testified Defendant McFee was going to call an ambulance, but Defendant Chamberlin told him not to do so. Plaintiff testified Defendant Chamberlin came down and saw him after his seizures. Chamberlin told him he was not going to be taken to the hospital. Instead, Plaintiff was told arrangements would be made for him to see a neurologist. Plaintiff was placed in a holding cell.

In response to questions from the Court, Plaintiff testified he loses consciousness during his seizures. He testified his denial of medical care claim is about what happened after he had his seizures. Specifically, he complained of the lack of medical attention after his seizures are over. He testified the deputies do help him when he is actually about to have or having a seizure. He testified he suffered after the seizures with a pinched nerve, nausea, dizziness and fainting spells. He saw a neurologist after about a week, and the neurologist sent him to the hospital where he was told he had suffered a concussion. Plaintiff testified he has suffered no permanent injury because he was not taken to the hospital immediately after the seizures and resulting concussion. Plaintiff testified he was taken to the hospital several times while in GCDC. When asked about his non-compliance in taking his seizure medication, he testified he is only non-compliant when he has side effects or when he has too much medication in his system. He testified the neurologist put him on anti-nausea medication. Plaintiff asked for a copy of his medical records and was directed to address that request to Defendants. Plaintiff testified he had filed a motion for them with the Court and never got a ruling. The docket does not reflect this motion. Plaintiff did not submit further medical documents after the hearing.

Defendants' counsel had no statement at the end of the hearing.

**2. LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.  DISCUSSION**

Defendants argue the case should be dismissed for three reasons: 1) no official capacity claims were alleged; 2) there was no denial of medical care because records show Plaintiff was taken to the hospital an average of three-four times per month was he was in GCDC and has provided no verifying medical evidence to establish any detrimental effects from any care delay; and 3) none of the Defendants in this case are medical staff responsible for medical treatment.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th

Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."

*Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

In this case, there is no question Plaintiff's epilepsy is an objectively serious medical need. However, Defendants argue, and I agree, that Plaintiff merely disagrees with the treatment provided. Based on his submissions and testimony, Plaintiff considered the medical treatment inadequate because he was not taken to the hospital in an ambulance after each seizure. Plaintiff failed to provide any medical records stating he needed to be taken to the hospital after every

seizure event. Plaintiff admitted he was non-compliant with his seizure medication when he felt non-compliance was appropriate, such as when he had side effects or when he felt his medication levels were too high. Plaintiff testified he had no permanent injury due to the failure to transport him to the hospital immediately after his seizures. Plaintiff also failed to provide any verifying medical evidence to show any lasting detrimental effect by the failure to transport him to the hospital. Plaintiff further testified he saw a neurologist about a week after these seizure incidents. Plaintiff's mere disagreement with the medical treatment provided is not actionable under § 1983.

The documents submitted by Defendants further support the adequacy of medical care provided to Plaintiff. Defendants submitted a medical complaint and treatment report indicating Plaintiff filed a medical complaint on September 23, 2014, and was seen by Dr. Hale. ECF No. 28-3. Defendants also state Plaintiff was taken to the hospital an average of three to four times per month, was seen regularly by medical providers in GCDC, and had numerous visits with outside specialists. ECF No. 28, p. 3. They further note Plaintiff's non-compliance with medical treatment, requiring extreme measures by GCDC medical staff to ensure he received his seizure medication as prescribed. Defendants reference an earlier case, 6:14-CV-06001-PKH-MEF, as additional evidence of extensive medical treatment for Plaintiff, as well as Plaintiff's non-compliance with his seizure medication.

Based on these facts, Plaintiff was provided with more than adequate medical care for his seizures on September 22, 2014, and September 23, 2014. There is, therefore, no question of genuine material fact as to Plaintiff's denial of medical care claim, and it fails as a matter of law.

**4.     CONCLUSION**

For the reasons stated, I recommend Defendants' Motion for Summary Judgment (ECF No. 27) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **30th day of June 2016.**

                                                /s/ Barry A. Bryant
                                                HON. BARRY A. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE